IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| | : | No. 15-461 |
| v. | : | |
| | : | |
| ALLIANCE ADJUSTMENT GROUP, et al | : | |
| | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                        **September 14, 2015**

Plaintiff Church Mutual Insurance Company (Church Mutual) brings this insurance fraud action against a licensed public adjuster and his public adjustment group, a law firm and two of its lawyers, and two companies contracted to examine and perform repairs to a property insured under a policy issued by Church Mutual to non-party African Episcopal Church of St. Thomas (AEC). Church Mutual alleges Defendants Alliance Adjustment Group (Alliance) and James Wagner (together, the adjusters) filed two fraudulent insurance claims on behalf of AEC with the assistance of DeLong Service Co., Inc. (DeLong),[1] an HVAC/chiller contractor, and JLD Emergency Services (JLD), an emergency remediation contractor. When Church Mutual denied one claim in part and the other entirely, the adjusters hired Defendants Claims Worldwide, LLC, Joseph A. Zenstein, Esq., and Joseph Thiroway, Esq. (together, the lawyers) to pursue the coverage claims in court. Ultimately, AEC dismissed that litigation with prejudice after hiring alternative counsel. Church Mutual subsequently filed this action against the adjusters, the lawyers, DeLong, and JLD, asserting claims for negligent misrepresentation in violation of the Restatement (Second) of Torts § 552 (Count I), fraud in violation of the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons. Stat. § 4117 (Count II), and civil conspiracy (Count III).

---

[1] DeLong was improperly identified in the Complaint as DeLong Services.

Three sets of Defendants have moved separately to dismiss the Complaint: (1) the adjusters, Alliance and Wagner; (2) the lawyers, Claims Worldwide, Thiroway, and Zenstein; and (3) DeLong. All three sets move to dismiss the three-count Complaint for failure to state a claim. In the alternative, the lawyers assert the judicial privilege immunizes their actions as to Counts I and II, and the Insurance Fraud Statute is unconstitutional under the Pennsylvania Constitution as applied to them. For the reasons set forth below, the Court will deny the adjusters' motion and grant DeLong's motion. Because the Court agrees the judicial privilege bars Church Mutual's negligent misrepresentation and statutory fraud claims against the lawyers, the Court will dismiss Counts I and II as to them. Because, however, Church Mutual has stated a claim against the lawyers for civil conspiracy, the Court will not dismiss Count III.

**BACKGROUND**[2]

Church Mutual has long insured AEC, a church in West Philadelphia, against property damage. Over the course of this relationship, Church Mutual has processed several claims on AEC's behalf. For instance, in 1996, AEC's property suffered extensive damage as a result of water infiltration, and Church Mutual paid AEC $514,000, of which $140,000 was used to repair the roof. No other repairs were made.

In June 2011, DeLong, a company specializing in heating and air-conditioning service and repair, inspected the chiller system at the AEC property. DeLong noted there was moisture and leaks around the system, some controls were set in the wrong direction, valves were missing, and insulation around the pipes was defectively installed. DeLong later recommended AEC install new pipe insulation.

---

[2] These facts are drawn from Church Mutual's Complaint and the attached exhibits, which the Court must accept as true in evaluating the motions to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

On December 19, 2011, AEC entered into a contract with Alliance, which is owned by Wagner, a licensed public adjuster. The contract authorized Alliance or its representative to assist in the adjustment of an insurance claim allegedly arising from "loss by water" on August 30, 2011. The contract provided AEC would pay the adjusters 25% of any amount paid by the insurance company in settlement of the loss. Two days later, the adjusters filed a claim reporting that AEC's property had sustained damage due to frozen copper pipes in the property's HVAC/chiller system, causing water to leak on August 30, 2011 (hereinafter the chiller claim). The adjusters also submitted an undated estimate for $133,385.66 in repairs, which listed costs to repair a number of rooms in the property without explaining what work needed to be done or how the work related to water damage. Church Mutual hired two experts to investigate the chiller claim. Colin Seybold, a forensic mechanical engineer, reported the water damage claimed resulted from defectively installed or missing insulation, which is not covered by the insurance policy. The other expert, Dewpoint Mechanical, an HVAC contractor, indicated it was highly improbable the damage was caused by frozen pipes. As result, Church Mutual denied coverage on the chiller claim on July 24, 2012.

On January 30, 2012, while the chiller claim was pending, AEC entered into a second contract with Alliance, retaining Alliance to assist in adjusting a claim arising from "loss by storm" on August 27, 2011. Again, the contract authorized the adjusters to collect 25% of the amount paid by the insurance company in settling the loss. Several days after AEC signed the contract, the adjusters filed an insurance claim alleging AEC sustained severe damage on August 27, 2011, as result of Hurricane Irene (hereinafter the hurricane claim). The adjusters also attached an undated estimate for $1,147,451.40 in repairs and again listed repair costs for a number of rooms in the property without explaining what work needed to be done or how the

3

hurricane caused the damage. In support of the claim, Alliance submitted photographs purporting to show damage sustained during the hurricane such as broken slate shingles. These photographs were taken by JLD, an emergency remediation company owned by non-party Jennifer L. Dezutter, the wife of non-party Daniel Baruto, an Alliance employee. While investigating the claim, however, Church Mutual's structural engineer, Russ Daniels, determined the damage allegedly caused by the hurricane was already present during a July 2011 Risk Control Inspection of the property and opined the majority of the damage resulted from wear and tear, not the hurricane. Daniels also noted aerial photographs of AEC's roof taken six weeks after the hurricane and later in 2013 showed no damage. Church Mutual's adjuster, Lew Gohean, who handled the 1996 claims for water infiltration, concluded the interior water damage allegedly caused by the hurricane was identical to the damage presented in AEC's 1996 claim. Ultimately, Church Mutual's roofer, Pro-Craft Roofing, determined any hurricane damage to the roof totaled only $2,500.00. As a result of these findings, Church Mutual determined no more than $7,563.33 in damage was caused by the hurricane, paid that amount, and denied coverage for the balance of the claims on September 27, 2012.[3]

After Church Mutual denied both the chiller claim and the hurricane claim, Alliance retained Claims Worldwide, Zenstein, and Thiroway, to pursue the two claims via litigation. The lawyers filed two separate coverage actions in the Court of Common Pleas of Philadelphia County. Church Mutual removed both actions to federal court in the Eastern District of

---

[3] In its letter partially denying coverage, Church Mutual indicated wind may have caused some of the damage observed on the roofing surfaces, but concluded the slate roofing was not damaged by wind, the missing or loose tiles were due to age-related fastener failure, and the interior water damage was not related to any of the covered wind damage. Because such damages were subject to a wear and tear or maintenance policy limitation, Church denied coverage on that portion of the claim.

Pennsylvania on July 31, 2013, and then moved to consolidate the actions.[4] During discovery, the lawyers deposed three individuals affiliated with AEC: Richard Jones, Randall Blakeney, and LeDon Elliotte. Jones, the rector's warden, denied seeing the estimates Alliance submitted to Church Mutual and testified the areas set forth in the estimates had not sustained damage. Blakeney, the Church's property chair, testified that other than a leak in the sanctuary of the church, the hurricane did not damage the property. Elliote testified the roof of AEC's sanctuary has leaked since 2010, before the hurricane. Because AEC's own witnesses disavowed substantial portions of the damages Alliance sought on AEC's behalf, AEC subsequently retained alternate counsel and dismissed both actions with prejudice. Church Mutual then initiated the instant action, alleging Defendants failed to conduct a proper investigation before submitting the hurricane and chiller claims, negligently or knowingly submitted claims containing false information, negligently or knowingly pursued the claims in litigation, and conspired with each other to profit through the filing of these false claims.

**DISCUSSION**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *id.* at 210-11, and must then "determine whether the facts

---

[4] Those actions are docketed at 13-cv-4454 (the chiller claim) and 13-cv-4453 (the hurricane claim).

alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief,'" *id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Three sets of Defendants have moved to dismiss Church Mutual's Complaint: (1) Alliance and Wagner; (2) Claims Worldwide, Thiroway, and Zenstein; and (3) DeLong.[5] The Court will address each motion in turn.

Defendants Alliance and Wagner move to dismiss all three counts of the Complaint for failure to state a claim. As to Count I, Church Mutual has stated a claim against the adjusters for negligent misrepresentation pursuant to Section 552 of the Restatement (Second) of Torts. To establish liability under Section 552, "a plaintiff must show . . . that[] the defendant is in the business of supplying information for the guidance of others and the information provider must have a pecuniary interest in the transaction; the information provided is false; the information was justifiably relied upon; and the defendant failed to exercise reasonable care in obtaining or communicating the information." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 936 A.2d 111, 115-16 (Pa. Super. Ct. 2007), *aff'd* 985 A.2d 840 (Pa. 2009); *see also Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 285-86 (Pa. 2005) (imposing "a simple reasonable man standard" on "businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors").

"Section 552 liability is not limited to design professionals." *Elliott-Lewis Corp. v. Skanska USA Bldg., Inc.*, No. 14-3865, 2015 WL 4545362, at *5 (E.D. Pa. July 28, 2015) (noting "accountants, lawyers, and architects" are in the business of supplying information). Rather, Section 552 liability attaches to those who are in the business of supplying information for pecuniary gain. *See Precision Pipeline, LLC v. Trio Surveying & Mapping, Inc.*, No. 13-1823,

---

[5] JLD has not filed a motion to dismiss, having answered the Complaint and filed a crossclaim against all other Defendants on July 24, 2015.

2014 WL 4415378, at *3 (W.D. Pa. Sept. 8, 2014) (applying Section 552 to surveying company); *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 380 (E.D. Pa. 2013) (applying Section 552 to insurance company because it supplied information for pecuniary gain and enjoyed an economic benefit from providing accurate information); *Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA*, No. 12-1572, 2013 WL 141591, at *6 (W.D. Pa. Jan. 11, 2013) (applying Section 552 to an inspection, product testing, and certification company); *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686, at *22 n.33 (E.D. Pa. Aug. 8, 2006) (applying Section 552 to an insurance broker who sold policies); *cf. Pannetta v. Milford Chrysler Sales Inc.*, No. 14-5680, 2015 WL 1296736, at *7 (E.D. Pa. Mar. 23, 2015) (holding car dealership was not in the business of supplying information for pecuniary gain); *Partners Coffee Co. v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 735 (W.D. Pa. Mar. 25, 2010) (holding coffee company was not in the business of supplying information); *Excavation Techs., Inc.*, 936 A.2d at 115-16 (holding public utility that failed to accurately mark gas lines in response to a statutorily authorized request was not subject to Section 552 liability because it did not provide the information for pecuniary gain or in a commercial transaction). *But see Excavation Techs., Inc.*, 936 A.2d at 116 (stating the Pennsylvania Supreme Court made clear "that application of Section 552 liability for economic loss was limited to design professionals").

As insurance adjusters, Alliance and Wagner run a business "which provide[s] services and/or information that they know will be relied upon by third parties in their business endeavors." *Bilt-Rite Contractors, Inc.*, 866 A.2d at 286.[6] And the Complaint sufficiently pleads

---

[6] In making this determination, the Court may look to provisions of "Pennsylvania law that indicate an intent by the Legislature to require [the defendants] to make sure they are conveying accurate information." *In re Brownsville Prop. Corp., Inc.*, No. 10-21959, 2013 WL 4010308, at

Alliance and Wagner negligently misrepresented information about the damages suffered by AEC's property to Church Mutual. *See, e.g.*, Compl. ¶¶ 37-43 (alleging Alliance and Wagner did not properly investigate the damage, question AEC about any damages, or request any repair or maintenance records as to the chiller before asserting the damage resulted from frozen pipes); *id.* ¶¶ 52-58 (alleging Alliance and Wagner similarly failed to properly investigate the damage allegedly caused by the hurricane or verify the damage with AEC before submitting the claim, and submitted the claim despite knowing the damage was not caused by the hurricane). Church Mutual has also alleged these Defendants had a pecuniary interest in the transaction, as they entered into a contract with AEC to receive 25% of AEC's recovery. *See* Compl. ¶ 16.

The adjusters nonetheless contend that Church Mutual could not justifiably rely on their representations because they had no obligation to ensure the information provided to the insurance company was truthful or accurate and because, regardless of the accuracy of the information, Church Mutual would have conducted its own investigation. At this stage, the Court finds the Complaint sufficiently alleges that Church Mutual justifiably relied upon the information provided by the adjusters. Even though an insurer may customarily conduct its own investigation before approving or denying an insured's claim, the insurer may still rely on the information provided by the insured as the basis for its investigation. Moreover, that the insurer may investigate the claim does not give an insured or its representative license to invent, inflate, or otherwise misrepresent the damages alleged in a claim. Without the allegedly false claims

---

*11 (Bankr. W.D. Pa. Aug. 1, 2013) (determining real estate brokers who negligently supplied information to potential buyers were subject to Section 552 liability). Public adjusters in Pennsylvania are licensed by the Commonwealth and are subject to fines or suspension/revocation of their licenses upon, "engaging in, or attempting to engage in, any fraudulent or misleading conduct with respect to a claim or loss" or "the commission of fraudulent practices." 63 Pa. Stat. § 1606(a)(2), (12). These statutory provisions evince a desire by the legislature to ensure public adjusters provide accurate information during the course of business.

filed by Alliance and Wagner, Church Mutual would not have been forced to expend time and resources investigating the alleged damage to AEC's property and defending its decision in the previous litigation. Because the Court finds that Church Mutual has stated a claim pursuant to Section 552, it will deny the adjusters' motion to dismiss Count I.

As to Count II, Church Mutual has also stated a claim for fraud against Alliance and Wagner under the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons. Stat. § 4117, which creates a private cause of action for insurers to remedy various types of insurance fraud. To state a claim under § 4117(a)(2), a plaintiff must allege the defendant (1) knowingly (2) presented false, incomplete or misleading information (3) concerning any fact or thing material to a claim (4) to an insurer. *See State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 632 & n. 13 (E.D. Pa. 2010), *aff'd*, 444 F. App'x 617 (3d Cir. 2011). A fact is material "if it concerns a subject relevant and germane to the insurer's investigation as it was then proceeding, or if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Wezorek v. Allstate Ins. Co.*, No. 06-1031, 2007 WL 2264096, at *15 (E.D. Pa. Aug. 7, 2007) (citations and quotation marks omitted).

Alliance and Wagner's primary argument for dismissal rests on Church Mutual's failure to plead fraud with adequate particularity. As the adjusters note, a claim sounding in fraud must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b). While allegations of "date, place, or time" satisfy the particularity pleading standard, "nothing in the rule requires them." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (noting a plaintiff may use alternative means of injecting precision and substantiation into its allegations of fraud). "When an insured knowingly provides a false statement, fraud is presumed." *Hepps v. Gen. Am. Life Ins.*, No. 95-5508, 1998 WL 564497, at *4 (E.D. Pa. Sept. 2, 1998) (citing *Shafer v. John*

9

*Hancock Mut. Life Ins.,* 189 A.2d 234, 236 (Pa. 1963)); *see id.* (noting "fraudulent intent may be inferred if the facts show the insured had presumptive knowledge"); *see also* Fed. R. Civ. P. 9(c) ("[K]nowledge . . . may be alleged generally.").

The Court rejects the adjusters' argument because the Complaint pleads with particularity that the adjusters knowingly submitted claims for non-existent damages and damages outside of the policy coverage. Church Mutual alleges, for instance, that "Alliance and Wagner knew that damage resulting from a defectively installed chiller system[] would not be covered under the Church Mutual policy," Compl. ¶ 33, but Wagner submitted an undated estimate for the chiller claim anyway, alleging the damage occurred as a result of frozen pipes, *see id.* ¶ 44. The Complaint further alleges Wagner knew the damage alleged in the hurricane claim was not the result of a hurricane. *See id.* ¶ 59. Alliance and Wagner, rather, realized old damage to the AEC property had not been repaired and submitted a claim listing damages identical to a claim paid by Church Mutual in 1996. *See id.* ¶ 66. In doing so, Alliance and Wagner purposefully submitted false information to Church Mutual, knowing the alleged damage would not be covered. *See id.* ¶¶ 68-69. Further, Alliance and Wagner knew the damage could not have been caused by the hurricane, as the damage was present in photographs taken during a July 2011 inspection of the church, several months prior to the hurricane, *see id.* ¶ 75, yet not visible in photographs taken six weeks after the allegedly date of loss and in 2013, *see id.* ¶ 76.

These allegations of fraud are pleaded with adequate particularity to withstand a motion to dismiss. *See Grammenos v. Allstate Ins. Co.*, No. 07-2725, 2009 WL 1068799, at *1 (E.D. Pa. Apr. 21, 2009) (holding there was sufficient evidence the plaintiff and his adjuster committed fraud for the question to go to the jury when the agent misrepresented the date and the extent of the property damage to the insurer); *Wezorek*, 2007 WL 2264096, at *14 (holding the

10

homeowner-plaintiffs committed insurance fraud pursuant to § 4117(b) by, during the course of an investigation into a fire at their property, representing their home was not being rented out, concealing the identity of the tenant, and misrepresenting their whereabouts on the night of the fire and the morning hours the following day, as these misrepresentations were designed to deceive the insurer into providing unobtainable insurance and prevented the insurer from investigating how the fire was set and who owned the property).

Alliance and Wagner also argue Church Mutual does not allege it relied upon the misrepresentations, as Church Mutual initiated its own investigation and denied the underlying claims. But reliance is not an element of § 4117(b)(2) insurance fraud. *See Lincow*, 715 F. Supp. 2d at 632 (holding insurers were not required to prove they actually relied on health care providers' misrepresentations to succeed on a § 4117 claim against the providers). Even if Church Mutual were required to allege reliance, it has satisfied the requirement, as the Complaint alleges Church Mutual used the information contained in the claims as the starting point for its investigation of the damages alleged. *See id.* at 631 (finding reliance when an insurance-company plaintiff's corporate witness testified that the company relied upon medical records generated by defendant-doctors to determine the value of insurance claims).

Finally, as to Count III, Church Mutual has stated a claim against Alliance and Wagner claim for civil conspiracy. To state a claim for civil conspiracy, a plaintiff must allege "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panyotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999). The plaintiff must make "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out

11

the alleged chain of events." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 ("Without more, parallel conduct does not suggest conspiracy . . . .").

Church Mutual alleges the adjusters and lawyer Defendants agreed to pursue fraudulent insurance claims, with the assistance of the two contractors, on a contingency fee basis and share any profits gained. *See id.* ¶¶ 87, 92, 93, 116. In furtherance of this scheme, Alliance and Wagner submitted a claim for water damage knowing the damage did not occur as a result of frozen pipes. *See id.* ¶ 44. Alliance and Wagner then filed a second claim listing damage that allegedly occurred during Hurricane Irene, but in fact was sustained by AEC prior to the filing of its 1996 claim. *See id.* ¶¶ 66-69; s*ee also id.* Ex. I. In support of the claim, the adjusters submitted photographs taken by JLD that purported to depict damage caused by the hurricane, but seemed suspicious to Church Mutual's expert. *See id.* ¶¶ 61, 78. When they were unable to recover on those claims, the adjusters directed the lawyers to file complaints alleging untrue facts without AEC's knowledge or approval. *See id.* ¶¶ 90, 96, 116; *see also* Ex. N (deposition of Richard Jones); Ex. O (deposition of Randall Blakeney); Ex. P (deposition of LeDon Elliotte). During the course of that litigation, Defendants refused to produce copies of all the photographs taken by JLD. *See id.* ¶ 73. Ultimately, AEC demanded the lawyers and the adjusters withdraw or dismiss the actions multiple times, but they would not. *See id.* ¶ 110; *cf. id.* ¶¶ 114-15 (alleging Wagner has an ownership stake or financial interest in Claims Worldwide and makes decisions regarding whether to pursue or withdraw litigation on behalf of Claims Worldwide). Because Church Mutual has adequately alleged a civil conspiracy claim against the adjusters, Count III will not be dismissed.

Claims Worldwide, Zenstein, and Thiroway also seek dismissal of all three counts of Church Mutual's Complaint. The Court will grant the lawyers' motion as to Count I, the

negligent misrepresentation claim. As pleaded, Church Mutual's Section 552 claim is premised

on the lawyers negligently filing complaints and/or pleadings premised on false or misleading

information or containing such information. The Court is unaware of any case applying

Pennsylvania law that specifically holds attorneys liable to a litigation adversary under Section

552.[7] The Court need not decide whether Section 552 applies in such circumstances, however, as

the Court will dismiss Count I as barred by Pennsylvania's judicial privilege.

The judicial privilege provides "immunity for communications which are made in the

regular course of judicial proceedings and are material to the relief sought," whether made by "a

party, a witness, an attorney, or a judge." *Schanne v. Addis*, ---A.3d---, 2015 WL 4920770, at *4

(Pa. Aug. 17, 2015). "Statements contained in pleadings, as well as statements made in the actual

trial or argument of a case, are privileged." *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986). This

privilege had its origin in defamation actions premised on statements made during litigation, but

---

[7] A number of federal and state courts have held claims against attorneys are cognizable under Section 552. *See, e.g.*, *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1487 (5th Cir. 1997) (holding negligent misrepresentation claim was cognizable against an attorney when the plaintiff alleged the attorney provided legal services and knew a third party intended to rely upon those services); *Cromeans v. Morgan Keegan & Co., Inc.*, 69 F. Supp. 3d 934, 937 (W.D. Mo. 2014) ("The national trend is to recognize a cause of action by non-clients for negligent misrepresentations by professionals, including lawyers, if the requirements of § 552 of the Restatement are satisfied."); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791-92 (Tex. 1999) (holding a non-client could sue an attorney under Section 552, as the liability arises from a "professional's manifest awareness of the non-client's reliance on the misrepresentation and the professional's intention that the non-client so rely"); *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 236-37 (Colo. 1995) (holding attorneys are subject to liability to third parties for negligent misrepresentations).

Some courts have held attorneys are not subject to Section 552 liability when the information supplied by the attorneys was issued in the context of an adversarial relationship. *See, e.g.*, *Mehaffy, Rider, Windholz & Wilson*, 892 P.2d at 237 (holding the plaintiffs' negligent misrepresentation claim against the defendant-attorneys was cognizable because the relied-upon opinion letters were issued to secure the plaintiffs' participation in a mutually beneficial business relationship, rather than in an adversarial context). Along these lines, the lawyers in the instant case assert Church Mutual cannot show it relied—or should have relied—on their representations because the representations were made in an adversarial context. The Court need not resolve this contention, however, as it will dismiss Count I for another reason.

now extends to all tort actions based on statements made during judicial proceedings. *See Panitz v. Behrend*, 632 A.2d 562, 564 (Pa. Super. Ct. 1993). The privilege yields only when the communication is not issued as a matter of regular course during the proceedings or is not pertinent and material. *See Borchetto v. Gibson*, 860 A.2d 67, 72-73 (Pa. 2004) (holding the judicial privilege did not apply to an attorney's transmission of a complaint to a reporter, as the transmission was extrajudicial and not relevant to legal proceedings); *Post*, 507 A.2d at 360-61 (holding a defamatory letter sent to a judge not regarding the judicial proceedings at hand was not protected by the judicial privilege).

Here, Church Mutual's negligent misrepresentation claim is premised entirely on filings and pleadings submitted by the lawyer Defendants during the regular course of judicial proceedings in which they sought payment on the chiller and hurricane claims; such a claim is barred by the judicial privilege.[8] *See Wallace v. Fed. Empls. of U.S. Dist. Ct.*, No. 07-1132, 2008 WL 1886107, at *6 (E.D. Pa. Apr. 28, 2008) (dismissing a fraud claim against two Assistant

---

[8] Church Mutual primarily relies on *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. 2014), in opposition to the application of the judicial privilege. In *Williams*, the court declined to apply New Jersey's litigation privilege to attorney statements made over the course of decades, in various courtrooms across the country, and in multiple litigations. *See* 765 F.3d at 318-19. These false statements were made in various letters and faxes, and in some instances, the attorneys actively destroyed or "created" evidence. *See id.* at 319. *Williams* is distinguishable from the instant litigation: although Church Mutual alleges moving Defendants pursued litigation premised on intentionally or unintentionally fraudulent information, it has not alleged the lawyers destroyed evidence or perpetrated a "systematic fraud designed to prevent a fair proceeding." *Id.*

   Church Mutual also cites to *Silver v. Mendel*, 894 F.2d 598 (3d Cir. 1990), in opposing the application of the judicial privilege. In *Silver*, the defendants caused an involuntary bankruptcy petition to be filed against the shareholder-plaintiff. In agreeing with the plaintiff that defendants' actions were not shielded by the judicial privilege, the court noted not only did defendants lack probable cause to believe in the merit of their petition, but they expressly filed the petition for a purpose other than securing redress from the court: namely, to interfere with the plaintiff's business. 894 F.2d at 603. No such allegation is raised here. Rather, Church Mutual asserts only that the lawyers sought relief in the underlying action to which they were not entitled.

United States Attorneys appointed to represent two judges as their actions in defense of the judges were protected by judicial privilege). Church Mutual's negligent misrepresentation claim against the lawyers, therefore, will be dismissed.[9]

The lawyers also move to dismiss Church Mutual's claim pursuant to Pennsylvania's Insurance Fraud Statute. As set forth above, a party bringing a claim pursuant to § 4117(a)(2) must allege the defendant (1) knowingly (2) presented false, incomplete or misleading information (3) concerning any fact or thing material to a claim (4) to an insurer. *See Lincow*, 715 F. Supp. 2d at 632. The lawyers assert the judicial privilege immunizes them against this claim as well.[10] Like its Section 552 claim, Church Mutual's insurance fraud claim is premised on the lawyers purposefully filing complaints and/or pleadings containing false and fraudulent misrepresentations with the intent to deceive and/or defraud Church Mutual. *See* Compl. ¶¶ 129-130. All alleged misrepresentations made by the lawyers were made during the course of litigation, and, thus, as explained above, their actions are shielded by the judicial privilege. The Court therefore will also dismiss Count II as to the lawyers.[11]

---

[9] The privilege applies only to communications made during the course of litigation. It does not extend to conduct. *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 312 (3d Cir. 2003). To the extent Church Mutual seeks to assert moving Defendants engaged in negligent misrepresentation beyond statements made during the course of judicial proceedings, it may seek leave to amend the Complaint to state such a claim.

[10] Defendants also argue imposition of liability under the Insurance Fraud Statute on an attorney would unconstitutionally infringe on the exclusive authority of the Pennsylvania Supreme Court to govern the conduct of attorneys. Because the Court will dismiss this claim on privilege grounds, it will not reach the constitutional question. *See P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999) ("[A] court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

[11] In the alternative, Church Mutual pleads a common law fraud claim for intentional misrepresentation against the lawyers. The judicial privilege shields these Defendants from this claim as well.

Finally, the lawyers seek dismissal of Church Mutual's civil conspiracy claim, arguing because they "acted within an attorney-client relationship, they cannot be considered conspirators." *Heffernan v. Hunter*, 189 F.3d 405, 406 (3d Cir. 1999) (characterizing this type of immunity as analogous to or a form of the intracorporate conspiracy doctrine). Ordinarily, the intracorporate conspiracy doctrine immunizes an attorney from allegations of conspiracy with his or her client unless the attorney acts solely for his or her personal benefit. *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297 (3d Cir. 2003). The doctrine, however, is inapposite in this case. The Complaint does not allege any concerted action between the lawyers and AEC, its ostensible client. Instead, it alleges the lawyers joined together with the adjusters and two contractors to submit and pursue fraudulent or misleading claims without AEC's knowledge or approval. *See, e.g.*, Compl. ¶¶ 90, 92-104, 107-111. Thus, the lawyers' actions, as alleged, were not within the context of an attorney-client relationship with AEC, and they are not entitled to application of the intracorporate conspiracy doctrine.

The lawyers alternately urge the Court to dismiss Count III because the Complaint does not allege they were involved in the actual submission of the claims to Church Mutual. Church Mutual's allegation, however, is not that the lawyers personally submitted the claims, but rather they entered into a scheme with the other Defendants to pursue fraudulent claims through the insurance adjustment process and litigation, if necessary. *See id.* Once there is an agreement, a conspirator "may be liable for overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Yong*, --- A.3d ---, 2015 WL 4366472, at *10 (Pa. Super. Ct. July 16, 2015); *see also Smith v. Berg*, 247 F.3d 532, 537-38 (3d Cir. 2001) (holding a defendant need not himself commit or agree to commit a substantive predicate act to be held liable for a civil RICO conspiracy "[i]n accord with the general

principles of criminal conspiracy law"). Thus, even though the lawyers did not themselves submit the claims for adjustment to Church Mutual, because the adjusters' submission of the claims was in furtherance of a joint scheme to defraud Church Mutual, Church Mutual has stated a claim for civil conspiracy against the lawyers.[12]

Finally, Defendant DeLong seeks dismissal of all claims against it. The Court finds Church Mutual has failed to state a claim against DeLong and will dismiss the Complaint against DeLong in its entirety.

DeLong was involved only with the chiller claim. Several months before the adjusters submitted that claim, DeLong inspected AEC's chiller. Shortly after the inspection, DeLong submitted an invoice to AEC dated June 21, 2011, stating it had found leaks and moisture in the system, valves installed in the wrong direction, and incorrect settings. *See* Compl. Ex. D at 1. DeLong also indicated it repaired the system by installing several new valves and a flow switch, filling refrigerant, setting the controls properly, and removing fluid. *See id.* Ex. D at 1-2. On August 30, 2011, DeLong wrote a letter to AEC summarizing the inspection, noting, "After investigating the chiller system we have found that the copper pipes in the walls were frozen

---

[12] The Court is aware "[a] claim for civil conspiracy cannot be pled without also alleging an underlying tort." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (internal citation and quotation marks omitted) (noting that when the alleged underlying tort is privileged, there is no underlying tort upon which to base a claim of civil conspiracy); *see also Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (holding civil conspiracy verdict could not stand absent verdict on underlying tort claim). However, so long as a plaintiff has alleged a tort against one member of the conspiracy, "a plaintiff need not allege an underlying tortious claim against every co-conspirator." *Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014) (noting also "civil conspiracy . . . is a mechanism for subjecting co-conspirators to liability"); *accord In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("[A]ctionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by *one* actor." (emphasis added)). Here, Church Mutual has stated claims for negligent misrepresentation and statutory insurance fraud against the adjusters and alleged the lawyers conspired with the adjusters to commit those tortious acts. At this stage, the Court finds these allegations are sufficient to state a civil conspiracy claim against the lawyers.

which caused the water to leak. The flow switch was stuck in the closed position causing the system to freeze. We installed a new flow switch and recommend all copper lines have new pipe insulation to rectify the problem." *Id.* Ex. C.

Church Mutual alleges DeLong's two communications with AEC reveal that DeLong knew the damage to the chiller was the result of a defectively installed system, which would not be covered by AEC's insurance policy. *See id.* ¶¶ 30-31, 33-34, 46-48; *id.* Ex. E1 at 7; *id.* Ex. E2 at 3; *id.* Ex. F at 1. Further, DeLong must have been aware the insulation was defectively installed, as it offered to fix the insulation at a cost of $119,000 in February 2012. *Id.* ¶ 36 & Ex. D at 5.

Based on these facts, Church Mutual brings a negligent misrepresentation claim pursuant to Section 552 against DeLong. The facts alleged in the Complaint, however, reveal DeLong did not provide false information. Rather, DeLong properly identified that the leaks and moisture in the chiller system resulted from inadequate or improperly installed insulation and recommended "new pipe insulation to rectify the problem." *Id.* Ex. C; *see also id.* Ex. D at 5. Even if DeLong incorrectly identified the immediate cause of the frozen pipes as the result of a stuck flow switch, it correctly identified the ultimate solution: installing new insulation. A plaintiff must allege the defendant negligently provided false information to establish Section 552 liability, and Church Mutual has not done so, nor has Church Mutual alleged DeLong had a pecuniary interest in the insurance claim or litigation. Accordingly, Count I will be dismissed.

As for the insurance fraud claim, Church Mutual has not alleged DeLong knowingly submitted any false, incomplete, or misleading information concerning any fact material to the chiller claim. Indeed, Church Mutual has not alleged DeLong submitted *any* information regarding the chiller system to Church Mutual, as both the aforementioned June 21, 2011,

18

invoice and August 30, 2011, letter were apparently sent from DeLong directly to AEC. Thus, the Court will dismiss Count II.

Finally, Church Mutual fails to state a claim for conspiracy against DeLong. Church Mutual argues DeLong's longstanding relationship with the adjusters and its awareness that the faulty installation would not be covered under AEC's insurance policy led it to concoct, with the adjusters, a theory alleging frozen pipes caused the damage. Church Mutual indeed alleges DeLong was a longstanding referral source for Alliance and Wagner, *see* Compl.¶ 27, and referred AEC to Alliance, *see* Compl. ¶ 28. Such allegations without more, however, are inadequate to state a civil conspiracy claim. *See Panyotides*, 35 F. Supp. 2d at 419 (requiring the plaintiff to bring "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events").[13] Accordingly, the Court will dismiss Count III, alleging civil conspiracy, against DeLong.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[13] In its opposition to DeLong's motion to dismiss, Church Mutual alleges DeLong participated in the previous litigation over the chiller claim, as it was present during the inspection of the chiller system by Church Mutual's independent adjuster, was identified by Claims Worldwide as an expert witness, and would have been represented by Claims Worldwide during depositions, which were cancelled when the litigation was discontinued. But none of these allegations are made in the Complaint or substantiated by the exhibits attached to the Complaint. And "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).