IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY | : : : : : : : : | CIVIL ACTION No. 15-461 |
| v. | | |
| ALLIANCE ADJUSTMENT GROUP, et al. | | |

<u>**MEMORANDUM**</u>

**Juan R. Sánchez, J.**                                                                                                                               **July 11, 2016**

      Plaintiff Church Mutual Insurance Company and Defendants Claims Worldwide, LLC, Joseph Thiroway, Esquire, and Joseph A. Zenstein, Esquire (together, "the lawyers") have filed Cross-Motions for Summary Judgment as to Church Mutual's conspiracy claim against the lawyers, the sole remaining claim in this case. Because there is no genuine dispute of material fact as to whether the lawyers agreed with other Defendants to defraud Church Mutual or acted with the requisite malice, the Court will grant the lawyers' Motion and will deny Church Mutual's Motion.

**BACKGROUND**

      This case centers around two insurance claims submitted by Alliance Adjustment Group (Alliance) and James Wagner (together, "the adjusters") to Church Mutual alleging damage to the African Episcopal Church of St. Thomas (AEC). The first claim alleged AEC suffered $133,000 in damages arising from a frozen chiller pipe, which leaked and caused water damage on August 30, 2011.[1] The second claim alleged AEC suffered $1,147,451.40 in damages during

---

[1] Statement of Undisputed Facts of Defendants Claims Worldwide, Joseph Zenstein, Esquire, and Joseph Thiroway, Esquire ¶¶ 2, 11 (hereinafter "Defs.' Statement"); Plaintiff's Statement of Uncontested Facts ¶ 11 (hereinafter "Pl.'s Statement").

Hurricane Irene, which passed through the Philadelphia area on August 27, 2011.[2] After conducting an investigation, Church Mutual denied the chiller claim,[3] but determined a portion of the hurricane claim was potentially covered and paid $7,563.33 toward the claim.[4]

Subsequently, AEC, represented by the lawyers, brought two civil actions against Church Mutual, one challenging the denial of the chiller claim and the other challenging the partial denial of the hurricane claim.[5] After removing the cases to this Court and following a period of discovery, AEC retained new counsel and agreed to dismiss both actions.[6] Church Mutual thereafter commenced this action against the lawyers, the adjusters, and two contractors hired to make repairs to AEC—DeLong Service Co., Inc. and JLD Emergency Services, seeking to recover damages for the time spent and expenses incurred in investigating the claims and defending the lawsuits. By Order of September 14, 2015, this Court dismissed all claims asserted against DeLong, and dismissed Church Mutual's negligent misrepresentation and fraud claims against the lawyers, holding they were barred by Pennsylvania's judicial privilege. Following discovery, Church Mutual settled with the adjusters and JLD, leaving only the civil conspiracy claim against the lawyers. Both Church Mutual and the lawyers seek summary judgment as to that claim. While Church Mutual contends the record proves Defendants conspired to defraud Church Mutual with malice, the lawyers, in contrast, contend the record is devoid of evidence

---

[2] Defs.' Statement ¶ 4; Pl.'s Statement ¶ 15.

[3] Defs.' Statement ¶ 12; Pl.'s Statement ¶ 14.

[4] Defs.' Statement ¶ 5; Pl.'s Statement ¶ 17.

[5] Defs.' Statement ¶ 15; Pl.'s Statement ¶ 22.

[6] Defs.' Statement ¶ 16; Pl.'s Statement ¶ 31.

indicating Defendants agreed to file and litigate unsupported claims, and did so with malice. The Court agrees with the lawyers.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). To defeat summary judgment, the nonmoving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file" to show there is a genuine issue of material fact. *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A) (indicating the party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the records"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

This analysis does not change when there are cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). "On cross-motions for summary judgment, the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovant." *Selective Way Ins. Co. v.*

*Travelers Prop. Cas. Co. of Am.*, 724 F. Supp. 2d 520, 525 (E.D. Pa. 2010) (citing *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008)).

As noted, only one claim remains against the lawyers: civil conspiracy.[7] In order to prove a claim for civil conspiracy, a plaintiff must show "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). "Proof of malice, i.e., an intent to injure, is [also] essential in proof of a conspiracy." *Id.* While a conspiracy may be proved by circumstantial evidence, such evidence must be full, clear and satisfactory. *Detris v. Roger*, --- F. Supp. 3d ---, 2016 WL 739015, at *8 (E.D. Pa. Feb. 24, 2016) (citing *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 39 (Pa. 1947)). "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence." *Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001) (quoting *Fife*, 52 A.2d at 39). Additionally, "civil conspiracy cannot be [established] without also [establishing] an underlying tort." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (internal citation and quotation marks omitted); *see also Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (holding a civil conspiracy verdict could not stand absent a verdict on underlying tort claim).[8]

---

[7] In the September 14, 2015, Memorandum Opinion dismissing Church Mutual's negligent misrepresentation and fraud claims against the lawyers as barred by the judicial privilege, this Court recognized to the extent Church Mutual sought to assert the lawyers engaged in misrepresentations beyond statements made during the course of a judicial proceeding, the judicial privilege would not immunize such conduct and Church Mutual could seek leave to amend the Complaint to state such a claim. In due course, Church Mutual filed a motion to amend on this ground, but the Court denied the motion for the reasons set forth in its June 30, 2016, Order. Accordingly this memorandum opinion does not address the parties' cross-motions for summary judgment as to Church Mutual's re-pleaded negligent misrepresentation and fraud claims.

[8] "[A]ctionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by *one* actor." *In re Orthopedic Bone*

Church Mutual's civil conspiracy claim is premised upon Defendants having "acted in concert with the common purpose of submitting fraudulent claims to Church Mutual" and "submitted false, incomplete, and/or misleading information . . . maliciously with the intent of injuring Church Mutual."[9] To withstand summary judgment, Church Mutual must produce evidence from which a reasonable jury could find Defendants agreed to file and litigation unsupported claims, and did so with malice. *See Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997) (upholding the trial court's entry of summary judgment where the appellants failed to introduce evidence showing the appellees were acting in concert or with malice). Church Mutual has failed to create a genuine issue of material fact as to either element. Church Mutual has not produced evidence directly supportive of a conspiracy, such as evidence of "meetings, conferences, telephone calls, or joint signatures on written recommendations," or even "facts inferring conspiratorial conduct." *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991). Rather, to establish the existence of a conspiracy, Church Mutual relies primarily on evidence regarding the close business relationships and high level of interconnectedness between Defendants.

Church Mutual points to evidence indicating Defendants were a significant source of business referrals for one another. For instance, Jennifer Dezutter, JLD's founder, started her company because she was given the opportunity to do emergency mitigation work by Wagner, of

---

*Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (emphasis added). So long as a plaintiff has proved tortious conduct by one member of the conspiracy, "a plaintiff need not [prove] an underlying tortious claim against every co-conspirator." *Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014) (noting "civil conspiracy . . . is a mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act" (alteration in original) (citation omitted)).

[9] Pl.'s Compl. ¶¶ 137-39.

5

Alliance.[10] In JLD's first year of business, "very close" to one hundred percent of its referrals came from Alliance and in its second year of business, Alliance remained the "primary referral source," although it is no longer JLD's primary referral or business source.[11] Additionally, Defendant DeLong referred JLD to Alliance for the chiller claim underlying this action.[12]

Church Mutual also points to evidence showing Defendants have worked together on other lawsuits. The lawyers represented Alliance or Wagner in five litigations against insurance companies[13] and defended Alliance or Wagner, personally, in two actions.[14] The lawyers also represented JLD in a defamation lawsuit against an insurance company, in which the adjusters were identified as witnesses to JLD's damages.[15] Further, in an action brought against Zenstein, one of the lawyers, by Citizen's Bank, Zenstein filed a counterclaim in which he identified Wagner as an "insurance adjuster," "colleague," and "business associate."[16] And in this particular litigation, the lawyers indicated to AEC they would "work in concert with Jim [Wagner] to achieve a favorable outcome."[17]

---

[10] Pl's Statement ¶ 94; Response of Defendants Claims Worldwide, Joseph Zenstein, Esquire, and Joseph Thiroway, Esquire to Plaintiff's Statement of Uncontested Facts ¶ 94 (hereinafter "Defs.' Resp.").

[11] Pl.'s Mot. for Summ. J. Ex. Y, at 31-32.

[12] Pl.'s Statement ¶¶ 91-92; Defs.' Resp. ¶¶ 91-92.

[13] Pl.'s Statement ¶ 113; Defs.' Resp. ¶ 113.

[14] Pl.'s Statement ¶¶ 114, 116; Defs.' Resp. ¶¶ 114, 116.

[15] Pl.'s Statement ¶ 123; Defs.' Resp. ¶ 123.

[16] Pl.'s Statement ¶ 120; Defs.' Resp. ¶ 120.

[17] Pl.'s Mot. for Summ. J. Ex. J, at 1.

The evidence also demonstrates Defendants are interconnected in other ways. The lawyers were previously Wagner's tenants, and as part of the lease, Wagner purchased "computers and furniture and belongings within that building for them."[18] Additionally, the lawyers and adjusters have employed the same people at different times. For instance, Steve Feinstein, an attorney, has worked both at Alliance and Claims Worldwide.[19] Likewise, Donna Wisnom, Alliance's claims coordinator, previously worked at Claims Worldwide.[20]

Finally, Church Mutual points to evidence showing Defendants are financially intertwined. Notably, the adjusters do not keep timesheets, but instead are paid based on an agreement between Wagner and Zenstein to which other Alliance and Claims Worldwide employees are not privy.[21] Wagner himself confirmed neither he nor Alliance prepares timesheets when the adjusters are retained as expert witnesses by the lawyers.[22] Instead, fees are "determined by [Wagner] on a case by case basis depending upon how much time is spent working on the case," and in some cases, an invoice will be prepared, "reflect[ing] lien amounts owed to Alliance Adjustment Group for the fees for work performed before litigation was

---

[18] Pl.'s Mot. for Summ. J. Ex. R, at 114-15; *see also* Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. Ex. G, at 31 (testimony of Zenstein indicating Wagner and/or his wife owned the building housing the lawyers through a company called Aquetong Acquisitions).

[19] *See* Pl.'s Mot. for Summ. J. Ex. OO, at 52, 54 (testimony of Alliance's Chief Operating Officer (COO) indicating Feinstein was employed by Alliance as an adjuster); *id.* Ex. RR (docket sheet for *Wagner v. Great N. Ins. Co.*, No. 09-3080 (E.D. Pa. 2009), indicating Plaintiffs James and Robin Wagner were represented by "Steven C. Feinstein").

[20] Pl.'s Mot. for Summ. J. Ex. OO, at 53.

[21] *See id.* at 71-72 (testimony of Alliance's COO indicating he was not familiar with the payment arrangement between Alliance and the lawyers); *id.* Ex. PP, at 140-141 (testimony of Attorney Thiroway indicating the same).

[22] Pl.'s Mot. for Summ J. Ex. QQ ¶ 7 (declaration of James Wagner).

commenced."[23] On occasion, no invoice or other record of time is prepared at all; instead, the time spent on the matter "is communicated to counsel for Claims Worldwide by [Wagner]."[24]

While this evidence shows Defendants worked closely together, it does not establish Defendants "acted in concert with the common purpose of submitting fraudulent claims to Church Mutual."[25] At best, Church Mutual's evidence demonstrates Defendants enjoyed close business relationships and worked together frequently. Even though the lawyers told AEC they would "work in concert" with Wagner to achieve a favorable outcome, this statement in conjunction with the evidence of closeness is no evidence of a conspiracy to commit an *unlawful* act. *See Scully*, 238 F.3d at 516. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 ("Without more, parallel conduct does not suggest conspiracy . . . ."). Indeed, Church Mutual concedes it has no personal knowledge of the extent of the lawyers' involvement in the claims prior to Church Mutual's denial of coverage.[26] While Church Mutual alleges as further evidence of the existence of an agreement to defraud, the lawyers converted the claims into complaints without independently investigating and/or verifying material facts with AEC members, the record shows the lawyers sent the complaints to AEC before filing them.[27] Finally, evidence showing the

---

[23] *Id.* ¶¶ 8, 10.

[24] Pl.'s Mot. for Summ J. Ex. QQ ¶ 11.

[25] Pl.'s Compl. ¶ 137.

[26] Pl.'s Resp. to Defs.' Statement ¶ 26.

[27] The evidence indicates two AEC members—Richard Jones, the rector's warden, and Albert Dandridge, Esquire—received a copy of the hurricane complaint before it was filed. Def.'s Mot. for Summ. J. Ex G (July 22, 2013, emails from Claims Worldwide to Dandridge and Jones asking them to "review the [Complaint] and let me know if it is okay to file with the Court" and same day response from Dandridge stating "Ok with me"). Dandridge alone received a copy of the chiller complaint; he responded to Claims Worldwide's request for review and permission to file with "Ok with me." *Id.*

adjusters were previously sued for insurance fraud does not establish the lawyers conspired with the adjusters to commit insurance fraud in *this* case.[28] Because Church Mutual has failed to produce evidence from which a reasonable jury could find the lawyers agreed with the other Defendants to pursue fraudulent claims, summary judgment is warranted as to Church Mutual's conspiracy claim.[29]

Even if the evidence proffered by Church Mutual were enough to create a genuine issue of material fact as to whether Defendants agreed to defraud Church Mutual, Church Mutual has failed to create a genuine issue of material fact as to whether the lawyers acted with malice, another essential element of a civil conspiracy claim. *See Thompson Coal*, 412 A.2d at 472 ("Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."). In *Thompson Coal*, the Pennsylvania Supreme Court affirmed the trial court's grant of summary judgment for a civil conspiracy defendant because the facts did not show "[the defendant] acted solely to injure [the plaintiff]," but instead showed the defendant "acted solely to advance the legitimate business interests of his client and to advance his own interests." 412 A.2d at 472. In interpreting *Thompson Coal*, courts in this district have construed the malice element narrowly as requiring proof that the *sole* purpose of the conspiracy is to cause harm to the party who has been injured.

---

Church Mutual vehemently disputes Dandridge and Jones actually reviewed the complaints or even received the documents. But insofar as it alleges the lawyers took no steps to independently verify the complaints with their client, the record belies this proposition.

[28] *See* Pl.'s Statement ¶ 126.

[29] Church Mutual, in contrast, contends the evidence summarized above is enough for the Court to find Defendants conspired to submit and pursue fraudulent insurance claims. In analyzing Church Mutual's motion for summary judgment, the Court must view this evidence in the light most favorable to the lawyers as the nonmoving party. *Hugh*, 418 F.3d at 267. In doing so, the Court cannot conclude no reasonable jury could find for the lawyers. Granting summary judgment in favor of Church Mutual, therefore, would be inappropriate.

*See, e.g., WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 WL 6788446, at *14 (E.D. Pa. May 13, 2005) (collecting cases).

When the record reveals an alleged conspiracy has a purpose beyond causing harm to the plaintiff, therefore, the plaintiff has failed to establish malice and summary judgment is appropriate. *See, e.g.*, *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009) (granting summary judgment on a civil conspiracy claim for lack of evidence of malice where the plaintiff's evidence showed the defendants acted for their own business benefit when allegedly misappropriating the plaintiff's trade secrets and leaving to join a competing business); *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 312 (E.D. Pa. 2008) (dismissing a civil conspiracy counterclaim because the defendant failed to produce any evidence of malice: even though the plaintiff's actions amounted to fraud, the evidence demonstrated she was guided by personal interests separate from desire to harm the defendant); *Barker v. Hostetter*, No. 13-5081, 2014 WL 1464319, at *31 (E.D. Pa. Apr. 15, 2014) ("The fact that it may have been necessary to deceive Plaintiff[], or otherwise willfully and maliciously commit various torts against [it][,] . . . does not equate to an allegation that the conspiracy was formed with the sole intent to injure Plaintiff[]."); *Simon v. Unumprovident Corp.*, No. 99-6638, 2002 WL 1060832, at *9 (E.D. Pa. May 23, 2002) (granting summary judgment where the evidence demonstrated the defendants terminated the plaintiffs' benefits to advance their own business interests, as the defendants' intent negated any alleged malice). *But see Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 434 n.4 (E.D. Pa. 2014) (suggesting *Thompson Coal* does not address whether a defendant is liable if he acts with mixed motives, but merely requires a plaintiff to prove an intent to injure lacking in justification).

Church Mutual has failed to produce evidence from which a reasonable jury could find the lawyers acted with malice in pursuing coverage litigation regarding the chiller and hurricane claims. *See Vizant Techs., LLC v. Whitchurch*, No. 15-431, 2016 WL 97923, at *25 (E.D. Pa. Jan. 8, 2016) (granting summary judgment on a civil conspiracy claim because the plaintiff failed to identify evidence demonstrating defendants acted with malice, merely citing to the complaint as support, and the court found no evidence of malice after review of the record). Although Church Mutual alleges Defendants "acted maliciously with the intent of injuring Church Mutual,"[30] Church Mutual also alleges Defendants "st[oo]d to gain financially from inflated and/or fabricated claims,"[31] and their goal was to "obtain payment of insurance benefits."[32] The Complaint thus concedes the possibility that Defendants did not act solely to harm Church Mutual. The record, moreover, contains no evidence showing the lawyers' sole purpose was to injure Church Mutual.[33]

The cases Church Mutual relies on in opposition are unpersuasive. Church Mutual cites *RDK Truck Sales & Service Inc. v. Mack Trucks, Inc.*, No. 04-4007, 2009 WL 1441578 (E.D. Pa. May 19, 2009), in which the court declined to grant summary judgment in favor of the civil conspiracy counterclaim defendants. Church Mutual argues that here, like in *RDK*, there is

---

[30] Pl.'s Compl. ¶ 139.

[31] *Id.* ¶ 94.

[32] *Id.* ¶ 138.

[33] Instead, various documents suggest Defendants acted to advance AEC's interests—and their own interests—by pursuing the chiller and hurricane claims. *See, e.g.*, Pl.'s Mot. for Summ. J. Ex. 1, at 1 (public adjuster contract between Alliance and AEC for assistance in the adjustment of a "water" claim); *id.* Ex. 2, at 1 (public adjuster contract between Alliance and AEC for assistance in the adjustment of a "storm" claim); *id.* Ex. E (Alliance's preliminary estimate of damages sustained by AEC in the chiller claim sent to Church Mutual's adjuster); *id.* Ex. J (retainer letter from the lawyers to AEC indicating the lawyers "would be "working in concert with Jim [Wagner] to achieve a favorable outcome for [AEC].").

considerable evidence demonstrating the lawyers acted both with intent to defraud and to advance their own interests. But the *RDK* court's holding hinged on finding the record contained enough evidence for a reasonable fact-finder to infer the plaintiff's injuries were not "an incidental side-effect of otherwise legitimate business interests, but rather the fruits of an unlawful conspiracy." *Id.* at *32. Here, in contrast, there is no evidence from which a jury could find the lawyers agreed to conspire with the other Defendants, much less showing they acted solely with the intent to injure Church Mutual, accruing financial benefit only as a side effect. *See Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, at *37 n.31 (E.D. Pa. Sept. 19, 2012) (distinguishing *RDK* on the basis that nothing in the *Synthes* record indicated Defendants acted solely with the intent to injure, with economic benefit only being an incidental side effect).

Church Mutual's reliance on *Sussenbach Family L.P. v. Access Midstream Partners, L.P.*, No. 14-1197, 2015 WL 1470863 (M.D. Pa. Mar. 31, 2015), is also misplaced. In *Sussenbach*, the court declined to dismiss the plaintiffs' complaint for failure to allege malice, as the plaintiffs, who alleged the defendants engaged in a scheme to defraud and deprive them of royalty payments without justification, would be entitled to relief if they were able to prove their allegations. *Id.* at *20. Central to the *Sussenbach* court's holding was the finding "no justification has been shown to exist for this scheme." *Id.* But in this case, Church Mutual's Complaint readily admits and the evidence shows the lawyers' purpose was not solely to injure Church Mutual, but rather to advance their financial interests, as well as AEC's interests, providing partial justification.

Finally, Church Mutual relies on *Doltz v. Harris & Associates*, 280 F. Supp. 2d 377 (E.D. Pa. 2013), which is also inapposite. In denying the defendants' motion for summary judgment,

the *Doltz* court found, in part, the plaintiff's evidence—financial records showing money transfers—presented a genuine issue of material fact as to whether the defendants conspired with malice by diverting corporate opportunities and contracts, and wasting corporate assets to benefit themselves and corporations they fully owned. *Id.* at 389-90. Here, however, the record contains no analogous evidence demonstrating Defendants actually accrued benefit, financial or otherwise, through their interactions with Church Mutual.

The lawyers also urge the Court to grant summary judgment based on Church Mutual's failure to establish an underlying tortious act upon which to predicate the civil conspiracy claim as (1) the conduct underlying the torts they are alleged to have committed—negligent misrepresentation and fraud—is absolutely privileged, and (2) Church Mutual has not proved the underlying torts were committed by any of the other Defendants in this action. As noted above, so long as there is an agreement, a conspirator "may be liable for overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Yong*, --- A.3d ---, 2015 WL 4366472, at *10 (Pa. Super. Ct. July 16, 2015); *see also Smith v. Berg*, 247 F.3d 532, 537-38 (3d Cir. 2001) (holding a defendant need not himself commit or agree to commit a substantive predicate act to be held liable for a civil RICO conspiracy "[i]n accord with the general principles of criminal conspiracy law"). Church Mutual thus need not establish an underlying tort against each co-conspirator. *See Tender Touch Rehab Servs., LLC*, 26 F. Supp.3d at 405. However, because the Court finds Church Mutual has not established a genuine issue of material fact as to whether the lawyers had an agreement with the other Defendants to defraud Church Mutual or had the requisite malicious intent, the Court need not reach the question of whether any of the lawyers' alleged co-conspirators committed the underlying torts alleged in this action.

**CONCLUSION**

Because Chuch Mutual has failed to produce evidence from which a reasonable jury could find the lawyers had an agreement with the other Defendants to pursue fraudulent insurance claims in order to defraud Church Mutual or acted with the requisite malice, the Court will grant the lawyers' Motion for Summary Judgment and will deny Church Mutual's Motion for Summary Judgment.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.